**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JAMIN LEVI MONTZINGO,**

**Plaintiff,**

**v.** **Case No: 8:26-cv-31-MSS-SPF**

**CITY OF LAKELAND, et al.,**

**Defendants.**

---

# ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Dismiss, (Dkt. 11), and Plaintiff's response thereto. (Dkt. 16) Also before the Court is Plaintiff's Motion to Amend Complaint, (Dkt. 26), and Defendants' response thereto. (Dkt. 28) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' Motion and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

## I. BACKGROUND

This action arises out of an administrative proceeding in connection with a citation for a red-light violation. On January 7, 2026, Plaintiff Jamin Montzingo filed a complaint against the City of Lakeland; Josh Brown, the hearing officer; Emma Williams, the Clerk; Intersection Safety Program; and an unnamed police officer pursuant to 42 U.S.C. § 1983, asserting claims for municipal liability (Count I) and a violation of his due process rights (Count II). (Dkt. 1) In the Complaint, Plaintiff

contends that the City of Lakeland relied on video and photographic materials generated and maintained by a private third-party vendor operating outside the State of Florida. (Id. at 2) He further contends that the City "failed to present a custodian of records, eyewitnesses, or any witness with firsthand knowledge of the creation, custody, or reliability of the evidence." (Id. at 2). Despite Plaintiff's objections, the hearing officer issued a conclusory ruling without written findings of fact. After this happened, Plaintiff alleges that Defendant John Doe Police Officer # 254 entered Plaintiff's personal space and made contact with him. As a result of these alleged violations, Plaintiff seeks declaratory and injunctive relief prohibiting ongoing and future enforcement actions based on the challenged practices.

With his Complaint, Plaintiff also filed a motion for temporary restraining order and preliminary injunction. (Dkt. 3) Plaintiff requested that the Court enter an order that enjoins "Defendant City of Lakeland, including its departments, programs, agents, and contractors, from continuing any collection, enforcement, or penalty actions arising from red-light camera Notice of Violation No. 1242500179509, pending resolution of this action." (Id. at 1) The Court denied the motion on procedural grounds, but also advised Plaintiff that based on the allegations, abstention appeared appropriate. (Dkt. 4)

Plaintiff then filed a second motion for temporary restraining order and preliminary injunction that corrected the procedural errors. The Court denied this second motion on its merits, finding Plaintiff could not establish a likelihood of success on the merits given the likelihood that abstention was appropriate. (Dkt. 14)

Undeterred, Plaintiff filed a third, nearly identical motion for a temporary restraining order and preliminary injunction, (Dkts. 18–19), which Defendants moved to strike. (Dkt. 20)

Defendants now move to dismiss the Complaint, arguing that the claims against Defendants Brown and Williams are barred by absolute immunity and the claims against the remaining Defendants fail to state a claim upon which relief may be granted. Alternatively, Defendants request that the Court convert their motion to a motion for summary judgment. With their response, Defendants submitted a video recording of Plaintiff's hearing.[1] (Dkt. 15)

The video establishes that Plaintiff was provided with an extensive fulsome hearing. Defendant Brown provided Plaintiff ample opportunity to raise his evidentiary objections, which Plaintiff repeated multiple times. Defendant Brown informed Plaintiff that he was overruling his objections, but those objections were preserved to the extent Plaintiff wished to appeal. At the hearing, the prosecuting officer testified that Plaintiff's violation "was reviewed before being issued by myself, a sworn police officer, and that the camera was tested before and after this violation was issued and passed both, before and after." (Id. at 12:55–13:10) At the end of the

[1] The Court declines to convert Defendants' motion into a motion for summary judgment. The Court may consider documents attached to a motion to dismiss that are central to a plaintiff's claims and for which the authenticity cannot be disputed. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). While Plaintiff's response states that the exhibit is improper, Plaintiff does not support this objection with any argument. (Dkt. 16) The Court finds the exhibit central to Plaintiff's claims and the authenticity of the document cannot be disputed; thus, the Court considers it principally to provide context for the challenges asserted in the complaint.

hearing, Defendant Brown asked Plaintiff multiple times whether he had anything else to say. Only after Plaintiff failed to respond to this question did Defendant Brown terminate Plaintiff's hearing. (Id. at 16:28–17:04) The video does not show any physical contact between the prosecuting officer and Plaintiff.

For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss.

While Defendants' motion was pending, Plaintiff filed his motion for leave to amend his complaint. (Dkt. 26) Plaintiff requests leave to amend his complaint to (1) add claim for damages under § 1983; (2) add specific factual allegations regarding the City's policies that have caused the alleged violations; (3) add specific facts addressing the availability of state remedies; (4) remove Defendant Emma Williams and the "Intersection Safety Program" as named parties; and, (5) identify the private vendor operating the Intersection Safety Program as a John Doe corporate defendant pending identification. (Dkt. 26) Because the deficiencies identified below are not addressed by Plaintiff's proposed amended pleading, (Dkt. 26-1), the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion. As discussed below, Plaintiff will be permitted to file an amended complaint, though not the proposed amended complaint included with his motion.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must meet an exceedingly low threshold of

sufficiency. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In light of a motion to dismiss, to evaluate the sufficiency of a complaint a court must accept the well pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III. DISCUSSION

### a. Absolute Immunity

Defendants first argue that the claims against Defendant Josh Brown, the hearing officer, and Defendant Emma Williams, the Clerk, are barred by absolute immunity. Plaintiff does not address this argument in his response to the motion to

dismiss, (Dkt. 16), though he does remove Ms. Williams as a defendant in his proposed Amended Complaint. (Dkt. 26-1) The Court construes this as a stipulation to dismiss Ms. Williams from this litigation. Accordingly, Defendants' motion is granted with respect to Ms. Williams. The Court also finds that absolute immunity precludes the claims against Mr. Brown.

"A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court." McCullough v. Finley, 907 F.3d 1324, 1330 (11th Cir. 2018). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 10 (1991). Judicial immunity is not defeated by allegations of bad faith or malice. Pierson v. Ray, 386 U.S. 547, 554 (1967). The absence of immunity would eviscerate the constitutional independence of the judiciary. Dennis v. Sparks, 449 U.S. 24, 31 (1980). A plaintiff may overcome judicial immunity only by showing that the judge either engaged in a non-judicial action or took actions where he acted in "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356–57 (1978); Mireles, 502 U.S. at 11.

Courts have recognized that judicial immunity extends to "hearing officers" who conduct administrative hearings just as it does to those elected or appointed to preside over judicial proceedings. Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001) (judicial immunity applied to state administrative law judge); McCall v. Montgomery Housing Auth., 809 F. Supp. 2d 1314, 1322 (M.D. Ala. 2011) (judicial immunity applied to municipal housing authority's hearing officer); Koger v. Keith,

No. 06-cv-61655, 2008 WL 299028, at *2 (S.D. Fla. Feb. 1, 2008) (stating that hearing officers are "entitled to the same level of immunity as any other state court judge in the State of Florida") (citing Fla. Stat. § 318.36); see also Cleavinger v. Saxner, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, . . . but from the nature of the responsibilities of the individual official.") (internal citation and quotation marks omitted). Plaintiff alleges that Mr. Brown "acted as the Municipal Hearing Officer and issued the signed final administrative order," (Dkt. 1 at 1), and that he "issued a conclusory ruling without written findings of fact." (Id. at 2) Because these allegations do not involve non-judicial actions or acts taken in the clear absence of all jurisdiction, Mr. Brown is entitled to absolute judicial immunity. Stump, 435 U.S. at 356–57.

**b. Due Process Claim**

Defendants argue that Plaintiff's claim for violation of his due process rights must fail because he failed to avail himself of the state appellate process.[2] To state a viable claim actionable under § 1983 for a procedural deprivation, a plaintiff must allege that "the state [has] refuse[d] to provide a process sufficient to remedy the procedural deprivation." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000). When a plaintiff fails to allege an absence of state remedies, dismissal is warranted. See generally Hogan v. City of Fort Walton Beach, 817 F. App'x 717, 722 (11th Cir.

[2] Defendants also argue that Plaintiff's claim fails pursuant to the Rooker-Feldman and Heck doctrines. Because the Court finds the first argument dispositive, it need not address these arguments.

2020) (affirming dismissal of plaintiff's § 1983 procedural due process claim where plaintiff failed to plead lack of adequate state remedies);[3] Ladd v. City of West Palm Beach, 681 F. App'x 814, 818–19 (11th Cir. 2017) (affirming dismissal of plaintiff's § 1983 claim because plaintiff failed to allege an absence of adequate state remedies to cure the failure to provide a name-clearing hearing).

When state remedies exist, but the plaintiff fails to avail himself of those remedies, the plaintiff cannot later assert that he was deprived of due process. See 625 Fusion, LLC v. City of Fort Lauderdale, No. 19-cv-61308, 2021 WL 1022838, at *10 (S.D. Fla. Mar. 17, 2021) (stating that "failure to pursue appellate remedies is, of course, fatal to [the] claim because, '[i]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process'") (quoting Cotton, 216 F.3d at 1331); JERMC LTD v. Town of Redington Shores, No. 8:19-cv-688, 2020 WL 1974224, at *4 (M.D. Fla. Apr. 24, 2020) (dismissing procedural due process claim, finding "it is unclear whether plaintiffs could make the necessary allegations since it appears that they never actually pursued state remedies"); Clewison Commons, LLC v. City of Clewison, No. 2:18-cv-339, 2019 WL6614220, *3 (M.D. Fla. Dec. 5, 2019) (dismissing procedural due process claim, finding "[i]f a plaintiff fails to avail itself of

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

adequate state remedies, that plaintiff cannot rely on that failure to claim that the state deprived [it] of procedural due process") (citation omitted).

Here, Plaintiff cannot state a cognizable § 1983 claim because state law provided an adequate remedy to the alleged deprivation of due process rights: an appeal to state court. This remedy is an adequate post-deprivation procedure. See Club Madonna, Inc. v. City of Miami Beach, 924 F.3d 1370, 1370 (11th Cir. 2019) (the procedure of appealing to state court "satisfies due process because the Florida Circuit Court has the power to remedy any procedural deficiencies and cure violations of due process"). Thus, Count II of Plaintiff's complaint is due to be dismissed.

**c. Municipal Liability Claim**

Count I of Plaintiff's Complaint brings a claim for municipal liability and alleges: "The conduct of Defendants was undertaken pursuant to the City of Lakeland's official policies, practices, and customs governing automated traffic enforcement. The City delegated substantial enforcement authority to the Private Third-Party Vendor and relied on its evidence, notices, and administrative processing as part of a unified enforcement scheme." (Dkt. 1 at 3) Defendants argue that the claim for municipal liability is due to be dismissed because it involves the adjudication of a state-law traffic offense and Defendant Brown was not acting as a policymaker for the City (which had no control over Brown's actions).

Plaintiff responds that the Complaint challenges the City's procedures and practices governing the Intersection Safety Program, including the use of third-party processing and enforcement mechanisms without constitutionally adequate

safeguards. The Court finds that dismissal of Count I is appropriate. First, Plaintiff fails to explain how the reliance on third parties (for gathering evidence or sending notices) is constitutionally improper.[4]

Even if Plaintiff could establish that this was constitutionally impermissible, Count I would be subject to dismissal for the reason cited by Defendants. On this point, the Court finds instructive the Eleventh Circuit's decision in Teagan v. City of McDonough, 949 F.3d 670 (11th Cir. 2020). In Teagan, the plaintiff sued the City of McDonough, Georgia after she was jailed for her failure to pay a municipal traffic ticket. The district court granted summary judgment on her Monell claim, finding the city's municipal court was acting pursuant to "its limited state judicial power" to enforce state misdemeanor laws. Thus, because the court was not acting on behalf of the city, the city could not be liable. Id. at 674. The Eleventh Circuit affirmed:

> Ms. Teagan was charged with driving without insurance, which constitutes a state-law misdemeanor offense. *See* Ga. Code Ann. § 40-6-10(a). Under Georgia law and the rationale of *Familias Unidas*, Chief Judge Patten was acting on behalf of the state when he presided over her case, found her guilty, sentenced her, signed a warrant for her arrest, issued a $100 "contempt charge" for her failure to pay the fine, and ordered her to serve the 60-day sentence that had been suspended. *See Familias Unidas*, 619 F.2d at 404. And because a conviction in a Georgia municipal court for a state-law misdemeanor traffic offense is appealable to the superior court, *see* Ga. Code Ann. § 40-13-28, we cannot say that under Georgia law the City had "control over" Chief Judge Patten or the McDonough municipal court with respect to the adjudication of Ms. Teagan's state-law misdemeanor traffic offense. *See McMillian*, 520 U.S.

---

[4] Notably, the Florida Supreme Court has held that Florida law authorizes third parties to "review information from red light cameras for any purpose short of making the probable cause determination as to whether a traffic infraction was committed." Jimenez v. State, 246 So. 3d 219, 230 (Fla. 2018).

> at 785, 117 S.Ct. 1734 ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or a particular issue."); *Grech*, 335 F.3d at 1332 ("[T]he appropriate § 1983 inquiry under federal law is whether ... Clayton County, under Georgia law, has control over the Sheriff in his law enforcement function, particularly for the entry and validation of warrants ... and the training and supervision of his employees in that regard."). We therefore affirm the district court's grant of summary judgment to the City on Ms. Teagan's § 1983 claims.

Id. at 677–78.

At least one decision from the Middle District of Florida finds Teagan's rationale applicable to the City of Lakeland's municipal traffic proceedings. See Mathis v. City of Lakeland, No. 8:21-cv-235-SDM-SPF, 2021 WL 11644468 (M.D. Fla. Aug. 2, 2021), report and recommendation adopted, 2021 WL 11644473 (Aug. 17, 2021). In Mathis, the court dismissed the plaintiff's municipal liability claim, explaining that the hearing officer defendants were not the final policymakers of the City or controlled by the City with respect to the plaintiff's case:

> Plaintiff was charged with state-law misdemeanor traffic offenses under Fla. Stat. §§ 316.074(1), and 316.075(1)(c)(1). Florida law confers jurisdiction on municipalities to designate hearing officers to interpret Florida's Uniform Traffic Control Law within the municipality's boundaries. *See* Fla. Stat. §§ 316.008, 318.30. Under Florida law, "Any Civil Traffic Infraction Hearing Officer Program established in a county under ss. 318.30-318.38 shall be subject to the supervision of the Supreme Court." Fla. Stat. § 318.30. And a municipality, "through its duly authorized officers, shall have nonexclusive jurisdiction over the prosecution, trial, adjudication, and punishment of violations of this chapter when a violation occurs within the municipality and the person so charged is charged by a municipal police officer." Fla. Stat. § 316.008(2). Because Defendants Vaughn and Brown adjudicated Plaintiff's state-law misdemeanor traffic offense, and their decisions were appealable to circuit court, the undersigned cannot find that the hearing officers were the final policymaker for the City or that the City had "control over" them concerning Plaintiff's case. *See Teagan*, 949 F.3d at

> 678. For this reason, the City is not liable under § 1983 for Vaughn's and Brown's administrative decisions.

2021 WL 11644468, at *5.

The Court finds Mathis persuasive and adopts its reasoning here. As such, Count I of Plaintiff's complaint is dismissed.

## IV. MOTION FOR LEAVE TO AMEND

As set forth above, Plaintiff also moves for leave to amend his complaint to (1) add claims for damages under § 1983, (2) add specific factual allegations regarding the City's policies that have caused the alleged violations; (3) add specific facts addressing the availability of state remedies; (4) remove Defendant Emma Williams and the "Intersection Safety Program" as named parties; and (5) identify the private vendor operating the Intersection Safety Program as a John Doe corporate defendant pending identification. (Dkt. 26) Because the deficiencies discussed above are not ameliorated by Plaintiff's proposed Amended Complaint, (Dkt. 26-1), the Court finds the motion should be granted in part and denied in part. The motion is denied to the extent that Plaintiff's due process and municipal liability claims are dismissed without leave to amend. Those claims may not be raised in any amended complaint. Plaintiff's may, as set forth below, attempt to plead a First Amendment and Fourth Amendment claims in an amended complaint if he has a good faith basis for asserting such claims.

### a. Due Process

In his proposed Amended Complaint, Plaintiff adds additional allegations as to inadequacy of state procedures to address the alleged due process violations. In

particular, Plaintiff states that an appeal under Florida Statute § 162.11 is limited to appellate review of the record created before the hearing officer. Because the final order contained no findings of fact and Plaintiff was not otherwise provided with a transcript or recording of the proceeding, any appeal could not meaningfully review the defects he alleges. This argument fails, as the Eleventh Circuit has already held that an appeal pursuant to § 162.11 "satisfies due process because the Florida Circuit Court has the power to remedy any procedural deficiencies and cure violations of due process." Club Madonna, 924 F.3d at 1379; see also Holiday Isle Resort & Marina Assoc. v. Monroe Cnty., 582 So. 2d 721, 721–22 (Fla. 3d DCA 1991) (stating that "constitutional claims such as those raised by the petitioners herein are properly cognizable on an appeal to the circuit court from a final order of an enforcement board taken pursuant to Section 162.11, Florida Statutes"); Laskar v. Peterson, 771 F.3d 1291, 1300 (11th Cir. 2014) ("In other words, even if a plaintiff suffered a procedural deprivation at his administrative hearing, there is no procedural due process violation if the state makes available a means to remedy the deprivation.").[5]

**b. Unreasonable Seizure and Excessive Force**

Plaintiff's proposed Amended Complaint also adds a claim for unreasonable seizure and excessive force in violation of the Fourth and Fourteenth Amendments to

[5] Moreover, the video of the hearing plainly contradicts Plaintiff's assertions. Plaintiff was permitted to present his objections, he was asked several times prior to concluding whether he had anything else to say, and Ms. Williams informed Plaintiff that the evidence Plaintiff submitted had been received and uploaded to the case file. Mr. Brown also informed Plaintiff that the proceeding was being recorded and he could request a copy of the video. (Dkt. 15)

the U.S. Constitution. Plaintiff alleges that, by "intentionally putting his hands on Plaintiff after being told not to touch him, restraining Plaintiff's freedom of movement, and physically moving him while additional officers stood behind Plaintiff in a show of force, Officer Doe # 254 seized Plaintiff within the meaning of the Fourth Amendment, without a warrant, probable cause, reasonable suspicion, or any lawful justification." (Dkt. 26-1 at ¶ 37) The Court will allow Plaintiff to file an amended complaint that includes this claim.

The Court finds it prudent to caution Plaintiff that if he brings a frivolous claim that is inconsistent with the evidence, he could face sanctions in the form of attorney's fees or other monetary sanctions. The Court has reviewed the video of the hearing, (Dkt. 15), which, in the parts that are viewable, contains no indication that the prosecuting officer ever put his hands on Plaintiff. The Court encourages Plaintiff to review the video before filing any amended complaint.

**c. Violation of the First Amendment**

Plaintiff's proposed Amended Complaint also adds a new claim for violation of the First Amendment. On this point, he alleges that the statements he made at the hearing are protected speech under the First Amendment. He then alleges that Defendants "silenced" him, "terminated the hearing mid-speech, and made physical contact with him and physically moved him because of the content of his protected speech and his objections, and not pursuant to any reasonable viewpoint-neutral rule of order." (Dkt. 26-1 at ¶ 41) The Court will allow Plaintiff to file an amended complaint that includes this claim.

Again, the Court cautions Plaintiff that bringing a frivolous claim could subject him to monetary sanctions. The Court has reviewed the video of the hearing, (Dkt. 15), which appears to show that Plaintiff was not prevented from speaking. While Defendant Brown often had to advise Plaintiff to "wait his turn" given his frequent interruptions of both Defendant Brown and the prosecuting officer, Plaintiff was permitted to speak in turn. At the end of the hearing, Defendant Brown asked Plaintiff more than once whether there was "anything else" he wanted to say. The Court again encourages Plaintiff to review the video before filing any amended complaint.

**d. Municipal Liability**

Finally, Plaintiff's proposed Amended Complaint adds additional allegations to his municipal liability claim. Plaintiff alleges constitutional violations that he suffered that were caused by the City's official policies, customs, and practices, including the policy of relying on unauthenticated vendor-created evidence without custodian testimony, without addressing evidentiary objections, and without issuing written findings of fact. First, the Court notes that Plaintiff's evidentiary objections were addressed (and overruled) at the hearing. Regardless, Plaintiff's new allegations do not alter the conclusion that here. As in Mathis, Defendant Brown was not the final policymaker of the City, nor was he controlled by the City with respect to the plaintiff's case. Thus, permitting Plaintiff to amend his complaint with this claim would be futile

## V. CONCLUSION

Upon consideration, it is hereby **ORDERED**:

1. Defendants' Motion to Dismiss, (Dkt. 11), is **GRANTED**.

2. Plaintiff's Complaint, (Dkt. 1), is **DISMISSED**. Counts I and II are **DISMISSED WITH PREJUDICE**.
3. Plaintiff's Motion to Amend Complaint, (Dkt. 26), is **GRANTED IN PART and DENIED IN PART**. Plaintiff may file a new amended complaint that brings claims for violations of the First and Fourth Amendments to the U.S. Constitution if Plaintiff believes there is a factual basis to do so. Any amended complaint should be directed only against those Defendant(s) who allegedly violated Plaintiff's First and Fourth Amendment rights.
4. Plaintiff must file any amended complaint within **fourteen (14) days** of the date of this Order. Failure to comply with this directive will result in the Court closing this matter without further notice.
5. Defendants shall thereafter have **fourteen (14) days** to respond to Plaintiff's amended complaint.
6. Plaintiff's Motion for Leave to File a Reply in Support of His Motion for Leave to File First Amended Complaint, (Dkt. 28), is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of August 2026.

Copies furnished to:
Counsel of Record
Any Unrepresented Party

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE